908 F.2d 502
 30 Soc.Sec.Rep.Ser. 484, Unempl.Ins.Rep. CCH 15548A
Teresa PITZER, Plaintiff-Appellant,
v.
Louis W. SULLIVAN, M.D., Secretary of Health and Human
Services,* Social Security
Administration, Defendant-Appellee.
 No. 89-35606.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted June 6, 1990.
Decided July 13, 1990.
 
 Ralph Wilborn, Eugene, Or., for plaintiff-appellant.
 Gary J. Thogersen, Asst. Regional Counsel, Dept. of Health and Human Services, Seattle, Wash., for defendant-appellee.
 Appeal from the United States District Court for the District of Oregon.
 Before SCHROEDER, NORRIS and WIGGINS, Circuit Judges.
 WILLIAM A. NORRIS, Circuit Judge:
 
 
 1
 Teresa Pitzer is 5 feet, 2 1/4 inches tall and weighs over 350 pounds. She applied for and was denied SSI disability benefits. The denial was upheld by an Administrative Law Judge ("ALJ"), the Appeals Council for the Social Security Administration, and by the district court without opinion. We now reverse.
 
 
 2
 * We will set aside the denial of a disability claim only if the Secretary's findings are not supported by substantial evidence in the record as a whole or if the Secretary's decision is based on legal error. 42 U.S.C. Sec. 405(g); Stone v. Heckler, 761 F.2d 530, 531 (9th Cir.1985). We consider the district court's decision, but we make "a full review of the facts" and "an independent determination as to whether the Secretary's findings are supported by substantial evidence." Stone, 761 F.2d at 532.
 
 
 3
 We note that the Secretary must make a five-part sequential inquiry, as described in 20 C.F.R. Sec. 416.920 (1989), to determine if a claimant is "disabled" under the Social Security Act, 42 U.S.C. Sec. 423(a)(1)(D), and thus, is eligible for benefits. The sequential inquiry continues until a question is answered affirmatively or negatively in such a way that a decision can be made that a claimant is or is not disabled.
 
 
 4
 The third question in the inquiry is whether the claimant's impairment meets or equals one of the medical listings given in 20 C.F.R. Part 404, Subpt. P, App. 1. If a claimant meets a listing or if his or her condition is medically equivalent to a listing, then he or she is presumptively disabled, without consideration of age, education, and work experience. 20 C.F.R. Sec. 416.920(d); Winans v. Bowen, 853 F.2d 643, 647 (9th Cir.1987).
 
 II
 
 5
 Pitzer contends that she meets medical listing 10.10(A) of Appendix 1.[1] She easily meets the weight requirement. Someone of her height must weigh at least 242 pounds, which she exceeds by at least 108 pounds.
 
 
 6
 To satisfy the remaining requirements of listing 10.10(A), Pitzer offered her own testimony as well as the observations and opinions of three examining physicians. As to her claim of a "[h]istory of pain," Pitzer testified that she cannot stand for very long without her knees hurting, and that they hurt when she sits or walks. Court Transcript ("C.T.") at 37. She also testified that she experiences lower back pain after standing, sleeping, or walking. Id. at 37-38. After a musculoskeletal examination on May 5, 1986, Dr. Byron Musa, M.D., noted that Pitzer "has chronic knee pain particularly on the right side occasionally with some swelling." C.T. at 109 (Exh. 17). After Dr. Franklin Wong, M.D., examined Pitzer on November 6, 1987, he noted that Pitzer complained of low back pain and knee pain that increased in the evening and after standing, walking, or bending. His clinical impression of her medical condition was: "1) Pathological obesity; 2) Chronic low back pain, influenced by No. 1; and 3) Bilateral knee pain, right greater than left, influenced by No. 1." C.T. at 121 (Exh. 20).
 
 
 7
 As to limitation of motion, Pitzer pointed to her examining physicians' observations. She was examined by Dr. Larry Jackson, M.D., on July 21, 1986, and he noted that she could flex her lumbosacral spine to 85 degrees, extend it to 15 degrees, laterally bend it to 30 degrees bilaterally, and rotate it to 40 degrees. Examination of her knees revealed a range of motion from 75 to 180 degrees bilaterally. X-rays of her knees showed early degenerative joint disease and osteoarthritic changes. See C.T. at 115 (Exh. 19) (report of Dr. Larry Jackson, M.D.). Dr. Wong also took X-rays and noted that Pitzer's obesity limited her hip and knee movement. Dr. Wong completed and verified a questionnaire for the disability determination services in which he said that in his opinion Pitzer met the requirements of listing 10.10(A).
 
 
 8
 The ALJ found that Pitzer did not satisfy the "history of pain and limitation of movement" requirements of listing 10.10(A) because the X-rays showed "only minimal degenerative hypertrophic changes off the posterior lips of the claimant's knee caps and not in the weight-bearing joints" and concluded that "[t]herefore, the evidence does not establish a history of pain and limitation of motion in any weight bearing-joint [sic] or of the spine." C.T. at 24. The ALJ went on to hold that "[t]he limitation of motion of the knees was limited by the claimant's obesity and not by arthritis in a weight-bearing joint." Id. In addition, the ALJ found, without any elaboration, that Pitzer's testimony of pain was not credible. Id. at 26.
 
 
 9
 Although the Appeals Council upheld the ALJ's denial of Pitzer's benefits, it modified some of the ALJ's findings. For example, the Appeals Council concluded that the "x-rays do show evidence of arthritis." C.T. at 8 (Order of Appeals Council) (emphasis added). However, the Appeals Council concluded that "the evidence of record does not establish limitation of motion associated with the arthritis." Id. What becomes clear from the Appeals Council's opinion is that the Appeals Council confused "limitation of motion associated with arthritis" with "limitation of motion due to arthritis." The Council used the two words interchangeably, see id., even though they describe different tests. It is plainly more difficult to establish that one condition is caused by the other than it is to establish that the two conditions are related to each other.
 
 
 10
 In addition, the Secretary argues that Pitzer had not presented evidence of "arthritis in the back or knees which caused severely limiting pain and restriction of motion" or "arthritic changes ... so advanced that it is the arthritis, not just obesity, which causes disabling pain and limitation of motion." Appellee's Brief at 11 (emphasis added).
 
 
 11
 From our review of the record, we conclude that the Secretary has added new requirements to medical listing 10.10(A) other than those required by the plain language of the regulation. The Secretary is requiring Pitzer to prove not just that she has a history of pain, but that the pain was "disabling" or "severely limiting," and not just that she has a "limitation of motion associated with arthritis," but that the arthritis "causes" the limitation of motion. These additional requirements cannot be justified by the plain language of the regulation. According to the regulation, once the weight requirement has been met, listing 10.10(A) requires only a "[h]istory of pain" and "limitation of motion ... associated with X-ray evidence of arthritis in a weight-bearing joint or spine." 20 C.F.R. Part 404, Subpt. P, App. 1. The regulation does not say what level of pain must be established (such as "severely limiting" or "disabling" as the Secretary suggests), but only that there must be a "history of pain." Similarly, the regulation does not say that the arthritis must "cause" the limitation of motion, but simply that it must be "associated" with it. Moreover, the regulation also says that long-term obesity is usually associated with other disorders, and it is "the advent of such disorders [that] is the major cause of impairment." 20 C.F.R. Part 404, Subpt. P, App. 1, 10.00(B) (emphasis added). Here, the Secretary has already acknowledged the advent of Pitzer's arthritis, see C.T. at 8 ("x-rays do show evidence of arthritis"), and cannot now require that the condition be "advanced." See Appellee's Brief at 11.
 
 
 12
 In sum, the Secretary's interpretation of its regulation flies in the face of the plain language of the regulation. The Secretary has denied Pitzer benefits for failing to meet requirements that are not set forth in the regulation.[2] The Secretary's erroneous interpretation of the regulation led him to conclude that Pitzer did not meet or equal the medical listing of 10.10(A) and was not presumptively disabled. Therefore, he proceeded to question four and five in the sequential inquiry, pertaining to work history, age and education, rather than stopping at question three.[3]
 
 
 13
 Even if the Secretary had not misinterpreted the regulation, his decision is nonetheless erroneous because he adopted the ALJ's decision to disregard the results of Dr. Wong's examination without setting forth legitimate reasons. "Although the ALJ is not bound by expert medical opinion on the issue of disability, he must give clear and convincing reasons for rejecting such an opinion where it is uncontradicted." Gallant v. Heckler, 753 F.2d 1450, 1454 (9th Cir.1984). Here, we have no legitimate conflicting testimony and no reason for the ALJ's rejection of Dr. Wong's opinions.[4]
 
 III
 
 14
 We have said that "[t]he decision whether to remand a case for additional evidence, or simply to award benefits is within the discretion of the court." Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir.1987). Here, where the Secretary has applied a higher standard than the plain language of the regulation permits, we hold that there has been legal error; and here, where the Secretary has failed to advance any legitimate reasons for disregarding the examining physicians' medical findings, reports, and opinion, we hold that substantial evidence does not support the Secretary's decision. This case presents us with a full record and one in which no further proceedings are necessary to develop the administrative record. See id. at 1232.
 
 
 15
 For the reasons stated above, we REVERSE and REMAND for payment of benefits.
 
 
 
 *
 Louis W. Sullivan is substituted for his predecessor Otis R. Bowen, Secretary of Health and Human Services, pursuant to Fed.R.App.P. 43(c)(1)
 
 
 [1]
 Listing 10.10(A) provides in relevant part:
 
 
 [10]
 10 Obesity. Weight equal to or greater than the values specified in Table I for males, Table II for females (100 percent above desired level) and one of the following:
 A. History of pain and limitation of motion in any weight bearing joint or spine (on physical examination) associated with X-ray evidence of arthritis in a weight bearing joint or spine.
 ....
 Table II.--Women
 Height without shoes Weight
 (inches) (pounds)
 .... ....
 61 236
 62 242
 63 250
 .... ....
 
 
 [20]
 C.F.R. Part 404, Subpt. P, App. 1
 
 
 [2]
 One district court has noted that "[t]his relatively modest pathological threshold is explained by the profound effect of excessive weight on a weight-bearing joint and on the speed at which further deterioration may be expected to occur in an overweight person." Johnson v. Bowen, 687 F.Supp. 1284, 1307 (W.D.Wis.1988). The Secretary has also explained that the arthritis need not be at an advanced stage because "we recognize the decreased ability of an impaired joint to bear the stress produced by extreme obesity. We also concede that joint pathology associated with extreme obesity will progress rapidly." 44 Fed.Reg. 18,175 (1979)
 
 
 [3]
 Because we hold that Pitzer's impairments "meet" the requirements of medical listing 10.10(A), we do not reach the question of whether they "equal" the requirements of listing 10.10(A)
 
 
 [4]
 To the extent that there is any conflicting evidence, it is provided by non-examining physicians at Oregon State Agency, who upon reviewing the documentary evidence, stated that "the claimant had or regained the physical and mental capacity to perform substantial gainful work before the expiration of any period of 12 continuous months." C.T. at 26. However, the conclusion of a non-examining physician is entitled to less weight than the conclusion of an examining physician. Gallant v. Heckler, 753 F.2d 1450, 1454 (9th Cir.1984). Moreover, there is nothing in the record before us that supports the non-examining physicians' and the Secretary's conclusion that Pitzer, who has not worked in fifteen years, and who cannot return to her former work as a dishwasher or waitress, see C.T. at 6, 9, has the functional capacity to perform light or sedentary work. Id. at 7. The nonexamining physicians' conclusion, with nothing more, does not constitute substantial evidence, particularly in view of the conflicting observations, opinions, and conclusions of an examining physician. See Gallant, 753 F.2d at 1454 (" 'A report of a non-examining, non-treating physician should be discounted and is not substantial evidence when contradicted by all other evidence in the record.' ") (quoting Millner v. Schweiker, 725 F.2d 243, 245 (4th Cir.1984))