Michael LAWSON, Plaintiff,

v.

Larry G. MASSANARI [1], Acting Commissioner of Social Security, Defendant.

No. CIV.00–6335–BR.

United States District Court, D. Oregon.

June 25, 2001.

1. Larry G. Massanari became Acting Commissioner of Social Security on March 29, 2001. He is substituted for his predecessors, Kenneth S. Apfel and William A. Halter, in accordance with Fed.R.Civ.P. 25(d)(1) and 42 U.S.C. § 405(g).

Kathryn Tassinari, Cram, Harder, Wells & Baron, P.C., Eugene, OR, for Plaintiff.

Michael W. Mosman, United States Attorney, William W. Youngman, Assistant United States Attorney, Portland, OR, Amy M. Gilbrough, Special Assistant United States Attorney, Seattle, WA, for Defendant.

## OPINION AND ORDER

BROWN, District Judge.

Plaintiff Michael Lawson seeks judicial review of a final decision of Commissioner, Social Security Administration, in which he denied Lawson's applications for disability

insurance benefits (DIB) under Title II of the Social Security Act (SSA), 42 U.S.C. §§ 401–433, and supplemental security income (SSI) payments under Title XVI of the SSA, 42 U.S.C. § 1381–1383f. This Court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). The Court **REVERSES** the Commissioner's decision and remands this matter for calculation and payment of benefits.

## ADMINISTRATIVE HISTORY

Lawson filed applications for DIB and SSI payments on June 30, 1998, with a protective filing date of June 16, 1998. He alleged disability beginning on November 18, 1997, due to back pain. Tr. 73–76, 78, 185–86.[2] The Commissioner denied the applications initially on August 5, 1998, and on reconsideration on November 3, 1998. Tr. 57–60, 65–67, 188–91; 193–95. On December 28, 1998, Lawson made a timely request for a hearing before an Administrative Law Judge (ALJ). Tr. 68.

The ALJ conducted a hearing on July 6, 1999, in which he heard testimony from Lawson and a vocational expert (VE). Tr. 29–51. On October 29, 1999, the ALJ issued a decision adverse to Lawson. Tr. 9–18. That decision became the Commissioner's final decision when the Appeals Council denied review on August 31, 2000. Tr. 5–6. 20 C.F.R. §§ 404.981, 416.1481. *See also Russell v. Bowen,* 856 F.2d 81, 83–84 (9th Cir.1988).

## FACTUAL BACKGROUND

### A. Lawson's History and Testimony

Lawson was born January 12, 1953. He was 44 years old on the alleged onset date of his disability and 46 at the time of his hearing. Tr. 34, 74. Lawson finished the twelfth grade; he did not complete any additional formal training. Tr. 34. He has work experience detailing automobiles,

repairing washing machines and dryers, performing fast-food industry jobs, and working as a janitor. Tr. 83. Lawson has not engaged in substantial gainful activity since the alleged onset of his disability. Tr. 17.

At the hearing, Lawson said he had last been employed as a hotel janitor. He experienced sharp debilitating pain in his left side while performing his duties. Physicians at White Bird Medical Clinic "took him off work," and his symptoms improved. Tr. 34–45.

Lawson went back to work, but his symptoms returned and worsened. He felt pain in his low back radiating down into his legs. He had swelling and muscle spasms in the lower back. The pain was severe and became sharper and heightened when he tried to walk or move. *Id.*

In May 1998, Lawson had back surgery for the third time. His symptoms improved for a short time after the surgery, but after about a month it became painful for Lawson to stand, sit, get out of bed, or roll over in bed. He had pain in the low back and both legs. The pain became excruciating when he tried to get out of bed in the morning. *Id.*

Lawson testified he could sit for no more than 10 to 15 minutes before his low back pain would get so bad that he had to move. He said he could stand for 15 to 20 minutes and did not attempt to walk any distance. He could lift a gallon of milk, but no more. Bending increased the pressure and pain on his back. He began using a cane for balance and sometimes he fell down when the pain became excruciating. Lawson said he could not perform household chores or shopping, he was unable to drive, he was unable to pursue his hobby of wood working, and he did not

---

**2.** "Tr." refers to the certified copy of the administrative transcript submitted by Defendant pursuant to 42 U.S.C. § 405(g).

leave his house except to go to the doctor. *Id.*

## B. Medical Evidence

The record indicates Lawson had back injuries during the 1970s. He was injured again in 1987 and had his first back surgery in June 1988. This procedure included a laminectomy and foraminotomy.[3] Lawson was unable to work for two to three months while recovering. Tr. 126–32.

In November 1991, Lawson went to St. Bernardine Medical Center for pain in the groin and low back. He was treated with epidural blocks. He was hospitalized for four days and had physical therapy, traction, and heat treatments. Lawson had bilateral back and hip pain radiating down the outsides of his legs and his right foot. He had numbness in the left foot. *Id.*

Physicians found limitations in his spinal range of motion and low back pain, heightened by movement and certain positions. Stanley Rouhe, M.D., diagnosed radiculopathy secondary to foraminal narrowing at L4–5 and L5–S1, causing nerve root compression, para-spinal spasms and pain in the S1 joints, lumbar spondylosis with possible disc herniation and lumbar spinal stenosis.[4] *Id.*

On April 16, 1991, Dr. Rouhe performed laminectomies of L3, L4, and L5 and removed disc material from L4–5. He cut away scar tissue left from the earlier surgery that was impinging the L5 nerve root. He removed connective tissue and bony material that was filling the spinal canal. There was evidence of chronic degenerative disc disease. *Id.*

On November 26, 1997, Lawson visited the White Bird clinic and complained of back and leg pain with muscle spasms. An examination revealed spasm in the lower back muscles which increased with straight leg raises and bending. Lawson was taken off work and received medication for pain. In two follow-up visits, Lawson showed improvement. He was released to return to work in January 1998. Tr. 140–42.

On February 19, 1998, Lawson made an unscheduled visit to the Veterans Affairs Medical Center (VAMC) and complained of unbearable back pain radiating to his lower legs with numbness in both legs. Lawson rated his pain as eight on a scale of ten. He said the pain increased when sitting or laying down. Lawson said he was unable to walk because of pain and muscle spasm in his legs. Tr. 143–65.

Based on a physical examination and a computed tomography (CT) scan, Gary Dandy, M.D., diagnosed degenerative joint disease with a recurrence of spinal stenosis in the lumbar spine. He noted a new onset of associated urinary dysfunction. A magnetic resonance imaging (MRI) study confirmed severe spinal canal stenosis. Dr. Dandy prescribed bed rest, alternating heat, and ice and pain medications. On February 23, 1998, Dr. Dandy wrote, "[A]t this time he [Lawson] is disabled from performing regular work functions." *Id.*

---

**3.** In these procedures, bone is removed to relieve pressure on the spinal cord or nerve root. A laminectomy is the removal of the posterior arch of a vertebra; a foraminotomy is the removal of the roof of the intervertebral opening. *Dorland's Illustrated Medical Dictionary* 650–51, 898 (28th ed.1994).

**4.** Radiculopathy is compression of the nerve root caused by a displaced intervertebral disc or narrowing of the spinal canal. Spinal stenosis is narrowing of the spinal canal caused by encroachment of bone into the space around the spinal cord. Foraminal narrowing is stenosis specific to the intervertebral opening. Lumbar spondylosis is a degenerative joint disease affecting the vertebrae and intervertebral discs and can cause stenosis and nerve root compression. Its symptoms are pain, stiffness, and sciatic radiation. *Dorland's Illustrated Medical Dictionary* 1404, 1564, 1576 (28th ed.1994).

Lawson's condition worsened. On March 18, 1998, Lawson reported increased pain involving his middle back, hips, buttocks, and radiating down the backs of his legs to his calves. In May 1998, Lawson had his third laminectomy surgery. In a post-operative visit on June 12, Lawson's neurosurgeon recorded persistent low back pain, flank pain, and weakness. The surgeon advised Lawson that no further surgery could be performed barring exceptional circumstances. *Id.*

At a follow-up examination on September 15, 1998, Lawson reported persistent back pain and exhibited pain behavior including an antalgic gait. Teresa Callahan, M.D., found tenderness in the lumbar region, palpable spasm of the paravertabral muscles, and limited range of motion of the spine. She referred Lawson for physical therapy. Dr. Callahan wrote, "[T]his patient is definitely at least temporarily totally disabled and cannot work his usual occupation." *Id.*

In July and August 1998, non-examining medical consultants prepared a Physical Residual Functional Capacity (PRFC) assessment at the request of Disability Determination Services (DDS).[5] They concluded Lawson had exertional and postural limitations. They said he could stand and/or walk about six hours in an eight hour shift. They found he could sit for about six hours as well. Tr. 166–73.

In November 1998, Lawson began physical therapy, including a daily home program and regular visits to VAMC. The physical therapist noted limited range of motion of the spine and increased pain with movement. Tr. 174–80.

In July 1999, an MRI study showed only small post-operative changes, including a narrowing of the spinal canal and disc space, disc desiccation, and degenerative disc disease. These changes were described as "mild." Tr. 181–82.

## C. Vocational Expert Testimony

The ALJ took testimony from a vocational expert (VE). Tr. 46–50. The ALJ posed a hypothetical person limited to work at the light exertional level and requiring the freedom to alternate sitting or standing as needed to relieve discomfort. The VE opined that such a person would not be able to do any of Lawson's prior work. *Id.*

The VE also stated such a person could perform other work available in the national economy. The jobs she proposed included cashier positions and light-delivery jobs that are available at the sedentary and light levels. On cross-examination, the VE stated the additional limitation of not being able to work a full shift or a full week would eliminate the cashier positions. She also said the delivery jobs were available on a part-time basis. The VE further stated absence from work for two days per month would eliminate all of the positions. *Id.*

## LEGAL STANDARDS

A person may be eligible for DIB payments if he or she has insured status under the SSA and suffers from a physical or mental disability[6]. 42 U.S.C.

5. DDS is a federally-funded agency of the Oregon Vocational Rehabilitation Division, Department of Human Services. It is the state agency that makes eligibility determinations on behalf, and under the supervision of, the Social Security Administration pursuant to 42 U.S.C. § 421(a) and 20 C.F.R. §§ 404.1503(DIB) and 416.913(SSI).

6. There is no challenge to the ALJ's ruling that Lawson met the requirements for insured status through December 31, 2001. *See* 42 U.S.C. § 423(c)(1). *See also* 20 C.F.R. §§ 404.110, 404.131.

§ 423(a)(1). Persons who are age 65 or over, blind, or disabled, and who are without insured status under the SSA may be eligible for SSI payments. 42 U.S.C. § 1382(a).

A claimant is disabled for purposes of the SSA if he or she is unable to engage in substantial gainful activity by reason of any medically-determinable physical or mental impairment that can be expected to cause death or to last for a continuous period of at least twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A person can be disabled for these purposes only if his or her impairment is "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is eligible for DIB or SSI payments because he or she is disabled. 20 C.F.R. §§ 404.1520, 416.920. *See also Tackett v. Apfel,* 180 F.3d 1094, 1098–99 (9th Cir.1999) (DIB); *Quang Van Han v. Bowen,* 882 F.2d 1453, 1456 (9th Cir.1989) (SSI). First the Commissioner determines whether the claimant is engaged in "substantial gainful activity". If the claimant is engaged in such activity, disability benefits are denied.

If not, the Commissioner proceeds to Step Two and determines whether the claimant has a medical impairment that meets the regulatory definition of "severe." 20 C.F.R. §§ 404.1520(a), 416.920(a). If the claimant does not, disability benefits are denied. 20 C.F.R. §§ 404.1520(c), 416.920(c).

If the impairment is severe, the Commissioner proceeds to the Step Three to determine whether the impairment is equivalent to any of a number of impairments the Commissioner acknowledges to be so severe that they are presumed to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 416.920(d). These are listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. If the claimant's condition meets or equals one in the regulatory listing of impairments, the claimant is presumed conclusively to be disabled.

If the impairment is not one that is presumed to be disabling, the Commissioner proceeds to Step Four to determine whether the impairment prevents the claimant from performing work that the claimant performed in the past. If the claimant is able to perform his or her former work, a finding of "not disabled" is made, and disability benefits are denied. 20 C.F.R. §§ 404.1520(e), 416.920(e).

If the claimant is unable to perform work that he or she performed in the past, the Commissioner proceeds to the Step Five, the final step, to determine whether the claimant can perform other work in the national economy in light of his or her age, education, and work experience. The claimant is entitled to disability benefits if he or she is not able to perform any other work. 20 C.F.R. §§ 404.1520(f), 416.920(f).

The claimant bears the initial burden of establishing his disability. *Gomez v. Chater,* 74 F.3d 967, 970 (9th Cir.), *cert. denied,* 519 U.S. 881, 117 S.Ct. 209, 136 L.Ed.2d 144 (1996). In the five-step framework used by the Commissioner, the claimant has the burden of proof as to steps one through four. In Step Five, the burden shifts to the Commissioner to show there are a significant number of jobs in the national economy that the claimant can perform given his or her residual functional capacity, age, education, and work experience. *Id.* If the Commissioner cannot meet this burden, the claimant is "disabled" and must prevail on his claim. 20 C.F.R. §§ 404.1520(f)(1), 416.920(f)(1).

■ The Commissioner also has an affirmative duty to develop the record. 20 C.F.R. §§ 404.1512(d), 416.912(d). *See also DeLorme v. Sullivan,* 924 F.2d 841, 849 (9th Cir.1991). To that extent, the proceedings are not adversarial, and the Commissioner shares the burden of proof at all stages. *DeLorme,* 924 F.2d at 849. *See also Tackett v. Apfel,* 180 F.3d at 1098 n. 3.

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings of fact are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). *See also Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir.1995); *Tackett v. Apfel,* 180 F.3d at 1098. Substantial evidence is such relevant evidence as a reasonable person might accept as adequate to support a conclusion. It is more than a mere scintilla but less than a preponderance of the evidence. *Andrews,* 53 F.3d at 1039. *See also Tackett,* 180 F.3d at 1098.

■ The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision. *Andrews,* 53 F.3d at 1039. *See also Tackett,* 180 F.3d at 1098. The Commissioner rather than the reviewing court must resolve conflicts in the evidence, and his decision must be upheld if the evidence would support either outcome. *Reddick v. Chater,* 157 F.3d 715, 720–21 (9th Cir.1998). Even if the Commissioner's decision is supported by substantial evidence, it must be set aside if the proper legal standards were not applied in weighing the evidence and in making the decision. *Id.*

## DISCUSSION

### A. ALJ Decision and Lawson's Claims of Error

The ALJ found Lawson was not disabled because he retained the residual functional capacity to perform work available in the national economy. Tr. 17–18. He made the following findings at each step of the evaluation required by 20 C.F.R. §§ 404.1520 and 416.920:

(1) Lawson had not engaged in substantial gainful activity after the alleged onset date of his disability;

(2) Lawson had medically-determinable impairments that satisfied the regulatory definition of "severe";

(3) Lawson's condition did not meet or equal the criteria of any impairment in the regulatory listing;

(4) Lawson did not retain the residual functional capacity for any work he performed in the past; and

(5) Lawson retained the residual functional capacity to perform the physical exertional and non-exertional requirements of a limited range of light and sedentary work. Such work exists in significant numbers in the national economy and includes jobs as a parking lot cashier and delivery driver.

Based on these findings, the ALJ ruled Lawson was not disabled. Alternatively, the ALJ ruled 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 202.21, compelled a decision of "not disabled" for a claimant of Lawson's age, education, and work history. Tr. 17–18.

Lawson asserts three errors on the part of the ALJ. He contends the ALJ failed to give legally adequate reasons for discrediting his subjective symptom testimony. He also contends the ALJ failed to give legally adequate reasons for ignoring the opinion of Dr. Callahan. Finally, he contends the ALJ failed to carry the burden of showing Lawson could perform other work in the economy on a sustained basis.

### B. Analysis

#### 1. Rejection of Lawson's Testimony

The ALJ accepted Lawson's testimony to the extent it established his severe back

impairment that prevented him from doing his former work. The ALJ rejected Lawson's testimony to the extent Lawson asserted excessive pain prevented him from doing any other work.

In evaluating a claimant's testimony regarding subjective symptoms, the ALJ performs a two-step analysis. First, the ALJ must determine whether the claimant has produced objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. 20 C.F.R. §§ 404.1529(a), 416.929(a). *See also Smolen v. Chater,* 80 F.3d at 1281–82; *Cotton v. Bowen,* 799 F.2d 1403, 1407–08 (9th Cir.1986).

■ The threshold test requires only a reasonable inference that the medically-shown impairment could cause the subjective symptom. *Smolen,* 80 F.3d at 1282. The claimant does not have to show that his impairment could reasonably be expected to cause the severity of the symptom he has alleged, but only that it could reasonably have caused some degree of the symptom. *Id.See also Fair v. Bowen,* 885 F.2d 597 (9th Cir.1989).

■ If there is medical evidence that meets this threshold and no affirmative evidence of malingering, the second part of the analysis requires the ALJ to assess the credibility of the claimant regarding the severity of symptoms. The ALJ can reject the claimant's testimony about his limitations only by offering clear and convincing reasons supported by specific facts in the record that demonstrate an objective basis for his disbelief. *Regennitter v. Commissioner,* 166 F.3d at 1296–97. *See also Lester v. Chater,* 81 F.3d 821, 834 (9th Cir.1995); *Dodrill v. Shalala,* 12 F.3d at 918. General findings are insufficient. The ALJ must identify specific testimony that is not credible and offer specific, cogent reasons for disbelieving it. *Lester,* 81 F.3d at 834. *See also Rashad v. Sullivan,*

903 F.2d 1229, 1231 (9th Cir.1990); *Dodrill,* 12 F.3d at 918.

■ The ALJ cannot reject a claimant's symptom testimony solely because it is not fully corroborated by objective medical findings. *Cotton v. Bowen,* 799 F.2d at 1407.

■ Here there is abundant objective medical evidence to meet the threshold, and the ALJ did not identify affirmative evidence of malingering. He was required, therefore, to give clear and convincing reasons for rejecting Lawson's testimony.

The ALJ found Lawson able to sit, stand, and walk for most of an eight-hour shift provided he was free to alternate positions frequently. The ALJ, therefore, rejected Lawson's testimony that excessive pain permits him only minimal periods of sitting, standing, or walking. The ALJ gave four reasons.

First, the ALJ found Lawson's ability to "do substantial sitting, standing or walking" was consistent with Lawson's disability report (identified as Exh. 1E). Tr. 78–83. In the cited disability report, Lawson said his condition kept him from working because of "trouble bending over, sitting, no prolonged standing or lifting over 20 lbs.... still experiencing recurrent pain in lower right side of body." By implication, the ALJ found the disability report inconsistent with Lawson's subjective symptom testimony. This Court is unable to discern an inconsistency that rises to the clear and convincing standard required to reject Lawson's testimony.

Second, the ALJ found Lawson's subjective symptom testimony was inconsistent with the lack of medical evidence that indicated a worsening orthopedic condition. The premise here is that Lawson's surgery in May 1998 restored him to his pre-impairment condition; thereafter, Lawson

claimed worsening symptoms without any objective deterioration in his orthopedic condition to support such worsening. This Court is unable to accept the underlying premise. The medical record indicates Lawson has made consistent reports of his symptoms since February 1998. At that time, Dr. Dandy opined he was disabled. Shortly after the surgery in May 1998, Lawson's surgeon wrote that Lawson's symptoms had improved: He could walk again, and his pain had decreased. The notes make clear, however, Lawson had not been restored to the condition he was in prior to the onset of his symptoms. The surgeon wrote: "symptoms sig. improved however not resolved—persistent lower back pain, right flank pain and complaints of weakness." Tr. 147.

On June 30, 1998, Lawson appeared at a DDS interview using a cane and limping severely. The interviewer reported Lawson appeared to be in pain and was not able to sit through the entire 45–minute interview. Tr. 84–87. At his follow-up visit with Dr. Callahan on September 15, 1998, Lawson exhibited pain behavior, and Dr. Callahan found objective medical grounds in her examination to support his pain behavior.

This record does not support the ALJ's premise that Lawson's impairment was resolved with the May surgery. Lawson asserts persistent symptoms rather than worsening symptoms, and his credibility is not diminished because the medical evidence does not show a worsening orthopedic condition. The ALJ found it significant that Lawson's 1999 MRI showed generally mild post-operative degeneration. As the ALJ noted, this would be inconsistent with reports of worsening symptoms. Lawson's claims, however, have remained relatively constant. In any event, the ALJ may not reject Lawson's testimony solely because it is not fully corroborated by objective medical evidence. *Cotton v. Bowen,* 799 F.2d at 1407.

Third, the ALJ rejected Lawson's symptom testimony because the medical record did not include notations to indicate Lawson reported highly restrictive functional limitations to treating sources. Specifically, the ALJ found it damaging to Lawson's credibility that he had not told treating sources that he used a cane to walk and sometimes required help to get out of a chair.

There is scant mention of any specific functional limitations in the post-operative treatment notes of Lawson's physicians. Indeed, Dr. Callahan opined Lawson was totally disabled without recording any specific functional limitation in her treatment notes. Only Lawson's physical therapist noted specific functional limitations in her treatment summary. She noted Lawson had difficulty driving, standing, bending, doing housework, and putting on his socks and shoes, but there was no reference to the specific functional limitations identified by the ALJ. Tr. 176. The ALJ made no attempt to determine whether this was an omission in Lawson's reporting or in the physical therapist's summarization of the interview. This fact cannot be interpreted to mean Lawson had no functional limitations. The ALJ found otherwise.

The various post-operative treatment notes consistently reflect observations of antalgic gait, pain behavior, and palpable muscle spasms together with reports of weakness, difficulty standing, leg numbness, and cramping. These symptoms are consistent with the functional limitations Lawson claims.

This Court concludes the omission of references to the specific functional limitations identified by the ALJ is not clear and convincing evidence that Lawson's testimony should be rejected.

Finally, the ALJ discredited the testimony because, in his view, Lawson did not pursue aggressive measures to treat his severe functional limitations. Tr. 14–15. The ALJ's assertion is not supported by the record. At the first follow-up examination after his surgery, Lawson was advised that further surgical intervention was no longer a viable option. At the follow-up examination in September, he received a referral for physical therapy, which he pursued. The ALJ did not attempt to identify in the record any other treatment available to Lawson.

This Court concludes the ALJ failed to give legally-adequate reasons for rejecting Lawson's testimony.

### 2. Rejection of Dr. Callahan's Opinion

■ The relative weight given to the opinion of a physician depends on his or her opportunity to observe and to get to know the patient as an individual. *Lester*, 81 F.3d at 830. The opinion of a treating physician deserves more weight than that of an examining physician and a non-examining physician's opinion is given the least relative weight. *Id. See also Smolen*, 80 F.3d at 1285.

■ If a treating or examining physician's opinion is not contradicted by another physician, the ALJ may only reject it for clear and convincing reasons. Even if it is contradicted by another physician, the ALJ may not reject the opinion without providing specific and legitimate reasons supported by substantial evidence in the record. *Lester*, 81 F.3d at 830. The opinion of a non-examining physician by itself does not constitute substantial evidence to reject the opinion of a treating or examining physician. *Id.* at 831. It may, however, constitute substantial evidence when it is consistent with other evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035,

1041 (9th Cir.1995). *See also Magallanes v. Bowen*, 881 F.2d 747, 752 (9th Cir.1989).

■ A physician's opinion of disability "premised to a large extent upon the claimant's own accounts of his symptoms and limitations may be disregarded where those complaints have been properly discounted." *Flaten v. Secretary of Health & Human Services*, 44 F.3d 1453, 1463–64 (9th Cir.1995). Although a treating physician's opinion is generally afforded the greatest weight in disability cases, it is not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability. *Magallanes*, 881 F.2d at 751.

Regarding Lawson's post-operative condition, the ALJ relied entirely on the 1999 MRI results. He did not mention the post-operative notes of Lawson's surgeon that indicated surgery had not resolved Lawson's condition. He did not mention Dr. Callahan's observations and objective findings or her conclusion that:

> This patient is definitely at least temporarily totally disabled and cannot work his usual occupation at the present time. This is likely to continue for at least 6 months. I will re-evaluate his disability at that time to decide if it will be permanent or not.

Tr. 144.

■ The ALJ's ruling followed the PRFC assessment of the non-examining DDS physicians, which said Lawson could sit, stand, or walk for six hours of an eight-hour shift. The ALJ gave no reason for disregarding Dr. Callahan's opinion and identified no evidence to support its rejection.

The Commissioner now argues a physician's opinion on the ultimate question of disability includes a vocational component that is not binding on the ALJ. Although the Commissioner is correct, the ALJ is

not relieved from his duty to give specific and legitimate reasons supported by substantial evidence for rejecting a medical opinion. This Court concludes the ALJ failed to give legally adequate reasons for disregarding Dr. Callahan's opinion.

### C. Remand

 The decision whether to remand for further corrective proceedings or for immediate payment of benefits is within the discretion of the court. *Harman v. Apfel,* 211 F.3d 1172, 1178 (9th Cir.), *cert. denied,* 531 U.S. 1038, 121 S.Ct. 628, 148 L.Ed.2d 537 (2000). A remand for an award of benefits is appropriate when "(1) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be, made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited." *Id.* at 1178 (quoting *Smolen v. Chater,* 80 F.3d 1273, 1292 (9th Cir.1996)). If the improperly rejected evidence were credited, the ALJ would be required to find Lawson disabled.

Additional delays for the Commissioner to attempt to satisfy his burden of developing the record are not justified. *See Kennedy v. Apfel,* No. CV 99–6039–HA, 2000 WL 913690 (D.Or.2000) (citing *Ragland v. Shalala,* 992 F.2d 1056, 1060 (10th Cir. 1993)) (when Commissioner's errors have caused delay, further administrative proceedings may be contrary to the interests of justice).

Finally, the Commissioner argues the evidence supports only a temporary worsening of symptoms. This assertion can be renewed in the periodic review required by 20 C.F.R. § 404.1594. No issues, therefore, remain to be resolved, and a finding of disability must be made.

The Court finds the record is complete, and there are no outstanding issues to justify remanding this matter for further proceedings. The Court, therefore, concludes remand for calculation and payment of benefits is warranted. *See Pitzer v. Sullivan,* 908 F.2d 502, 506 (9th Cir. 1990) (when the Commissioner failed to advance any legitimate reasons for rejecting the examining physician's evidence and the record was complete, the matter was properly remanded for payment of benefits). *See also Harman,* 211 F.3d at 1179; *Shore v. Callahan,* 977 F.Supp. at 1079–80.

### CONCLUSION

Based on the foregoing, and after considering the record as a whole, the Commissioner's decision to deny benefits is **REVERSED** and this matter is **REMANDED** for calculation and payment of benefits in a manner consistent with this Opinion and Order.

IT IS SO ORDERED.