Joan E. INGRAM, Plaintiff–Appellant,

v.

Jo Anne B. BARNHART,* Commissioner of Social Security, Defendant–Appellee.

No. 02–35608.

D.C. No. CV–01–00479–RSL.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 11, 2003.

Decided Aug. 4, 2003.

---

* Jo Anne B. Barnhart replaces William A. Halter as Commissioner of Social Security.

Before REAVLEY,** TASHIMA, and PAEZ, Circuit Judges.

### MEMORANDUM ***

Joan E. Ingram appeals the district court's judgment affirming the Commissioner of Social Security's determination that she is no longer eligible for Supplemental Security Income (SSI) benefits under Title XVI of the Social Security Act.[1] We reverse because the Commissioner improperly credited the testimony of non-examining sources over the testimony of examining sources, leading to error in the identification of Ingram's severe impairments and in the determination of whether Ingram would still be considered disabled if she stopped using drugs and alcohol. We remand and order the Commissioner to restore Ingram's benefits because no further fact-finding is required. The record conclusively establishes that Ingram is disabled without considering the effects of drug addiction or alcoholism (DAA) on her ability to work.

### Standard of Review

We review de novo a district court's decision upholding the Commissioner's de-

---

** The Honorable Thomas M. Reavley, Senior United States Circuit Judge for the Fifth Circuit, sitting by designation.

*** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9TH CIR. R. 36–3.

1.   42 U.S.C. §§ 1381 et seq.

nial of benefits.[2] The decision of the Commissioner must stand if it is supported by substantial evidence and applied the appropriate legal standards.[3]

"Substantial evidence" is "such relevant evidence as a reasonable mind might accept to support a conclusion."[4] It may be less than a preponderance of the evidence, but must be more than a mere scintilla.[5] If substantial evidence supports both a denial and an award of benefits, we may not substitute our judgment for that of the Commissioner.[6] However, we must consider the entire record, "weighing both evidence that supports and evidence that detracts" from the Commissioner's conclusion.[7] Evidence is not substantial if a reasonable mind considering the record as a whole would not accept the evidence as support for the Commissioner's decision.[8]

**2.** *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir.2001)(citing *Harman v. Apfel*, 211 F.3d 1172, 1174 (9th Cir.2000)).

**3.** *See id.* (citing *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir.1999)).

**4.** *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971)(quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)).

**5.** *Holohan*, 246 F.3d at 1201 (citing *Tackett*, 180 F.3d at 1098).

**6.** *Id.*

**7.** *Id.*

**8.** *See id.* ("[W]e cannot affirm the Commissioner's decision 'simply by isolating a specific quantum of supporting evidence.' ")(citing *Tackett*, 180 F.3d at 1098 (citations and quotations omitted)).

**9.** Pub.L. No. 104–121 § 105, 110 Stat. 847, 852–55 (1996)(codified in scattered sections of 42 U.S.C.).

**10.** 42 U.S.C. § 1382c(a)(3)(A)(defining disability).

*Determining Disability in the Context of DAA*

Before the enactment of the Contract with America Advancement Act (CAAA),[9] the disabling effects of a claimant's DAA were factored into the Commissioner's assessment of a claimant's ability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment."[10] The CAAA amended the Social Security Act to require that a claimant be disabled without regard to DAA in order to be eligible for SSI benefits.[11] Because Ingram's prior disability determination identified her as drug and alcohol dependent, the Commissioner's review of that disability determination was proper under the CAAA.[12]

Once a case is identified for review under the CAAA, the Commissioner must

**11.** 42 U.S.C. § 423(d)(2)(C)("An individual shall not be considered to be disabled ... if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled.").

**12.** Ingram complains that the Commissioner violated her due process rights by considering her case without first obtaining the file upon which the initial disability determination was based. She also assigns error to the Commissioner's finding that the initial disability determination was based on DAA.

Under the CAAA, individuals that the Commissioner identifies as ineligible for benefits because of medical evidence of DAA are required to re-apply for a redetermination of their eligibility, "including a new medical determination." § 105(b)(5)(C), 110 Stat. at 855. Thus, the Commissioner is not bound by the pre-CAAA disability determination. So long as the claimant is given the opportunity to present evidence of disability unrelated to her addictions, failure to locate or reconstruct the file upon which the prior decision was based does not result in an unacceptable risk of erroneous deprivation in violation of due process of law. *See Holohan*, 246 F.3d at 1209 (explaining what process is due a claimant or recipient of disability benefits).

begin the review by following the five-step sequential process for ascertaining whether a claimant is disabled.[13] If at any point during the five-step analysis a claimant is found to be disabled and there is medical evidence of DAA, then the Commissioner must consider whether the claimant's substance abuse is a contributing factor material to the determination of disability.

The key factor in determining the materiality of DAA is whether the claimant would still be considered disabled if she stopped using drugs or alcohol. To make this determination, the Social Security Administration will:

> ... ■ evaluate which of [the claimant's] current physical and mental limitations ... would remain if [the claimant] stopped using drugs or alcohol and then [2] determine whether any or all of [the claimant's] remaining limitations would be disabling.[14]

The claimant bears the burden of proving that her alcoholism or drug addiction is not a contributing factor material to the finding of disability.[15]

*Ingram's Severe Impairments*

A social security claimant may present three types of medical opinions to support her claim of disability: (1) opinions of those who treat the claimant (treating sources); (2) opinions of those who examine but do not treat the claimant (examining sources); and (3) opinions of those who neither examine nor treat the claimant (consulting or nonexamining sources).[16] Ingram offered evidence from treating substance abuse counselors and evidence from three examining physicians: (1) Dr. Kent Reade, M.D., (2) Dr. Alan Breen, Ph.D., and (3) Dr. Richard Washburn, Ph.D. The Commissioner offered the report of Dr. Hugh Murray, M.D., a Department of Disability Services consultant who never examined or treated Ingram.

The opinion of an examining physician is entitled to greater weight than the opinion of a nonexamining physician.[17] The Commissioner must provide "clear and convincing reasons" for rejecting the uncontradicted opinion of an examining or treating physician.[18] If contradicted by another doctor, the opinion of a treating or examining physician can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record.[19] Lastly, the opinion of a nonexamining physician cannot, by itself, constitute substantial evidence that justifies the rejection of the opinion of either an examining or treating physician.[20]

At step two of the five-step sequential process, the Commissioner was required to identify Ingram's "severe impairments."[21] An impairment, or combination of impairments, is severe if the condition(s) "significantly limit [one's] physical or mental ability to do basic work activities."[22] The Administrative Law Judge (ALJ) considering Ingram's case identified her severe impairments as a personality disorder,

---

13. *See* 20 C.F.R. § 404.1520.

14. 20 C.F.R. § 416.935(b)(2).

15. *Ball v. Massanari,* 254 F.3d 817, 821 (9th Cir.2001).

16. *Lester v. Chater,* 81 F.3d 821, 830 (9th Cir.1995).

17. *Id.* (citing *Pitzer v. Sullivan,* 908 F.2d 502, 506 (9th Cir.1990)).

18. *Id.* (citing *Pitzer,* 908 F.2d at 506).

19. *Id.* at 830–31 (citing *Andrews v. Shalala,* 53 F.3d 1035, 1043 (9th Cir.1995)).

20. *Id.* (citing *Pitzer,* 908 F.2d at 506 n. 4).

21. 20 C.F.R. § 404.1520(c).

22. *Id.;* 20 C.F.R. § 416.921.

post-traumatic stress disorder (PTSD), and a substance abuse disorder. Although Ingram has had "other symptoms or conditions from time to time," the ALJ concluded that because those conditions were transient and did not result in significant limitations they were not severe.[23]

The Commissioner applied the wrong legal standards for identifying Ingram's severe impairments. The examining physicians' opinions indicate that Ingram suffers from dysthymia (a form of depression) and a panic disorder, both of which have a significant impact on her ability to work. Dr. Richard Washburn diagnosed Ingram with "disabling" depression, and his opinion is substantiated by the notes of her treating counselors. No other physician indicated that Ingram either does not suffer from depression or that her depression is mild or has no significant impact on her ability to work.[24] The Commissioner failed to provide clear and convincing reasons for rejecting Dr. Washburn's diagnosis, and that rejection is utterly without support in the record. Additionally, Dr. Reade diagnosed Ingram with a panic disorder *and* residual PTSD. Although Dr. Washburn did not diagnose Ingram with a panic disorder distinct from PTSD, the opinion of examining physician Dr. Reade can only be rejected for specific and legitimate reasons supported by substantial evidence in the record.[25] The Commissioner failed to give specific and legitimate reasons for rejecting the panic disorder diagnosis, and the record does not suggest any legitimate reasons exist.

In drug and alcohol addiction cases, the question is whether the claimant would be still disabled if not dependent on drugs or alcohol. Thus, each and every impairment must be considered to determine if the combination of the remaining impairments is severe.[26] If a severe impairment is omitted at step two, it is impossible to perform the proper analysis for differentiating the effects of DAA from the effects of a claimant's other impairments. As the ALJ did not identify Ingram's dysthymia or panic disorder as severe impairments, he necessarily did not fully consider the effects of the combination of Ingram's severe impairments.

The Commissioner erred by excluding Dr. Washburn's diagnosis of depression and Dr. Reade's diagnosis of a panic disorder from his step-two analysis of Ingram's "severe impairments" without providing specific, legitimate reasons supported by substantial evidence in the record. We find that the record fully supports a finding that Ingram suffers from depression and a panic disorder and that both disorders have more than a de minimus effect on her ability to work. There is no evidence to the contrary, and the Commissioner should have considered whether these disorders would persist if Ingram stopped using drugs or alcohol.

### *Error in Differentiating the Effects of DAA from Ingram's Other Impairments*

The Commissioner also erred when separating the disabling effects of Ingram's

---

23. This explanation for failing to identify Ingram's dysthymia and panic disorder as severe impairments is troubling, as the ALJ fully credited Ingram's testimony and acknowledged that the medical records indicate that Ingram has a history of depression and suffers from daily anxiety attacks.

24. *Cf. Ball,* 254 F.3d at 821–22 (finding no error in failing to identify dysthymia as a

severe impairment where the medical sources indicated the claimant suffered from "mild" dysthymia).

25. *Lester,* 81 F.3d at 831 (citing *Andrews,* 53 F.3d at 1043).

26. *See Smolen v. Chater,* 80 F.3d 1273, 1290 (9th Cir.1996).

DAA from the disabling effects of her other impairments. The first step in performing differentiating analysis in DAA cases is to determine which impairments would remain if the claimant stopped using drugs or alcohol.[27] Error in identifying a claimant's severe impairments necessarily corrupts the differentiating analysis because the Commissioner cannot consider whether each of the claimant's severe impairments would persist if she stopped using drugs or alcohol.[28]

■ If the testimony of the examining sources is properly credited, the record compels the conclusion that Ingram's PTSD, panic disorder, and personality disorder would persist if she stopped using alcohol or drugs.[29] Dr. Washburn examined Ingram when she had been sober for six weeks and concluded that she will continue to suffer from personality disorder and PTSD even if she receives treatment for her substance abuse.[30] Dr. Reade, who examined Ingram when she had been sober for 35 days, diagnosed her with drug and alcohol addiction in recent remission. Nevertheless, he concluded that her ability to respond appropriately and tolerate the pressures and expectations of a normal work setting was severely limited as a result of her anxiety, which Dr. Washburn indicated would not abate without targeted treatment. Dr. Reade rated Ingram's global illness as severe and indicated that her limitations were exacerbated but not caused by DAA, and thus would not necessarily dissipate after an extended period of sobriety. These findings directly contradict the ALJ's conclusion that Ingram would only experience moderate limitations on her ability to deal with the public if she stopped using alcohol and drugs.

Rather than address these opinions, the Commissioner searched the record for isolated statements which, when taken out of context, suggest that Ingram's DAA is material to her disability. For instance, the ALJ cited Dr. Washburn's report as evidence of Ingram's ability to work during periods of sobriety. That statement in Dr. Washburn's report, however, refers to Ingram's ability to work before she was brutally assaulted in Denver, Colorado–the event that triggered the onset of her PTSD. There is no evidence in the record that Ingram suffered from PTSD when

---

27. 20 C.F.R. § 416.935(b)(1).

28. Additionally, the Commissioner failed to make any findings, as the regulations require, regarding which impairments would persist. See 20 C.F.R. § 404.1535(b)(2); see also Sousa v. Callahan, 143 F.3d 1240, 1245 (9th Cir.1998) ("[T]he court failed to distinguish between substance abuse contributing to the disability and the disability remaining after the claimant stopped using drugs or alcohol. The two are not mutually exclusive. Just because substance abuse contributes to a disability does not mean that when the substance abuse ends, the disability will too.") (emphasis in original).

29. In contrast, the record does not compel the conclusion that Ingram's dysthymia would persist if she stopped using alcohol or drugs. Dr. Washburn did not specifically state that Ingram's dysthymia would not resolve even if she were successfully treated for DAA. Nevertheless, the ALJ should have identified dysthymia as a severe impairment and considered whether it would persist if Ingram stopped using alcohol or drugs.

30. Although the Social Security Administration's Program Operation Manual System (POMS) lacks the force of law, see Christensen v. Harris County, 529 U.S. 576, 587, 120 S.Ct. 1655, 146 L.Ed.2d 621 (2000), the POMS directs that an individual should not be considered disabled if "the evidence documents that, after a drug-free period of 1 month, the other impairment(s) is by itself not disabling." POMS § DI 90070.050(D)(3). The logical inference is that if, after a drug-drug free period of one month, the other impairments are still disabling, the individual's drug and alcohol addiction should not be considered material.

she was able to work or that DAA is material to Ingram's PTSD.[31] Additionally, the ALJ emphasized the statements in the medical reports that demonstrate that Ingram has a tendency to relapse and under-report her substance abuse. This is evidence of Ingram's chemical dependency, but it is not evidence that her other impairments are not disabling.

The ALJ also misrepresented the report of Dr. Breen. Pursuant to a referral by the Social Security Administration, Dr. Breen, unlike Dr. Washburn, only tested Ingram's memory and intelligence. Dr. Breen reported that those tests provided him with inadequate information with which to fully diagnose Ingram, and he felt it necessary to rule out depression/dysthy-mia, general anxiety disorder, PTSD, and a panic disorder as severe impairments. The ALJ acknowledged Dr. Breen's inability to fully diagnose Ingram, but stated that Dr. Breen found "no striking evidence of impairment" without clarifying that he only tested Ingram's memory and intelligence or that Dr. Breen suspected that Ingram suffered from myriad mental illnesses (a suspicion that independent clinical testing by Dr. Washburn confirmed).

Moreover, while Dr. Breen opined that Ingram's alcoholism contributed to her problems, this is not substantial evidence of the materiality of DAA. First, Dr. Breen was completely unable to assess whether Ingram would still be disabled if she stopped abusing alcohol because he was unable to diagnose the panoply of her impairments without further testing. Second, drug addiction and alcoholism inevitably contribute to other mental impairments, but that does not establish or even imply materiality, particularly where the examining physician was unable to make any firm diagnoses other than alcoholism.[32] No reasonable mind considering the record as a whole would conclude Dr. Breen's report is evidence of the materiality of DAA to Ingram's limitations resulting from Ingram's other impairments.

Similarly, no reasonable mind considering the record as a whole would conclude that Dr. Murray's report is substantial evidence of the materiality of DAA to Ingram's disability. Dr. Murray, who considered Ingram's medical records before any clinical testing was done to diagnose her mental impairments,[33] concluded that if she were not addicted to drugs and alcohol she would experience only moderate limitations on her ability to deal with the public. The Commissioner credited this opinion and determined Ingram would not be prevented from engaging in substantial gainful activity were it not for DAA.

It was legal error for the Commissioner to credit the opinion of non-examining physician Murray over the opinions of examining physicians Reade and Washburn. Moreover, the Commissioner failed to consider that Dr. Murray did not have the benefit Dr. Washburn's clinical testing or

---

**31.** The record does suggest that the converse is true. Dr. Washburn specifically noted that Ingram is vulnerable to substance abuse relapse due to her personality disorder and PTSD.

**32.** *Holohan*, 246 F.3d at 1209 ("[A] determination that drug addiction and alcoholism 'contributes' to a claimant's disability is importantly different from a determination that [it is a] 'contributing factor[] material to' a claimant's disability. In the former case, but

not in the latter, a claimant may be disabled notwithstanding her or his alcoholism or drug abuse.").

**33.** Dr. Murrary did consider the memory and intelligence testing performed by Dr. Breen, despite the fact that Ingram did not claim to be disabled by memory or intelligence limitations. He did not consider the diagnostic testing performed by Dr. Washburn.

diagnoses when preparing his report. Dr. Murray specifically stated in his report that the evidence he considered was insufficient to make a diagnosis or assess Ingram's abilities, and that the effects of Ingram's withdrawal from alcohol could not be conclusively distinguish from the effects of her other impairments, which he could only estimate. His speculations and estimations based upon incomplete medical testing are not substantial evidence of the materiality of DAA.

Viewing Dr. Murray's report in the context of the complete record, it is abundantly clear that the Commissioner erroneously credited his opinion over the opinions of examining physicians Drs. Reade and Washburn. If the examining physicians' opinions are properly credited, particularly the opinion of Dr. Washburn that Ingram will continue to suffer from disabling PTSD and personality disorder even if her substance abuse is successfully treated, there is no question that Ingram is entitled to SSI benefits.

### Conclusion

After examining the record as a whole and weighing the evidence that both supports and detracts from the Commissioner's decision, we conclude that the Commissioner improperly credited the testimony of a non-examining physician over the testimony of examining physicians. The Commissioner made no attempt to distinguished between the substance abuse contributing to the disability and the disability remaining after Ingram stopped using drugs and alcohol,[34] as is evidenced by the utter lack of findings in this regard. The record as a whole compels the conclusion that Ingram would still be disabled if she did not suffer from drug addiction and alcoholism.

We have discretion to remand social security cases for additional evidence and findings or to award benefits.[35] We choose the latter course in this case because once the examining physicians' testimony is properly credited, particularly the testimony of Dr. Washburn, the record establishes that Ingram is entitled to benefits as a matter of law. Further proceedings would serve no useful purpose.[36] Accordingly, we reverse the judgment of the district court with instructions to remand the case to the Social Security Administration and order the Commissioner to retroactively reinstate Ingram's benefits.

REVERSED and REMANDED.

---

34. *Sousa,* 143 F.3d at 1245.

35. *Smolen,* 80 F.3d at 1292 (citing *Swenson v. Sullivan,* 876 F.2d 683, 689 (9th Cir.1989)).

36. *See, e.g., Reddick v. Chater,* 157 F.3d 715, 729–30 (9th Cir.1998).