**Amy FREDERICK, Plaintiff,**

v.

**Jo Anne BARNHART, Commissioner of Social Security,[1] Defendant.**

**No. 01–CV–6252L.**

United States District Court,
W.D. New York.

May 5, 2004.

---

1. Plaintiff's complaint names former Acting Commissioner of Social Security Larry G. Massanari as the defendant. Jo Anne B. Barnhart, the current Commissioner, automatically is substituted as the defendant pursuant to Fed.R.Civ.P. 25(d)(1).

Mark H. Wattenberg, Southern Tier Legal Services, Bath, NY, for Plaintiff.

Brian M. McCarthy, U.S. Attorney's Office, Rochester, NY, for Defendant.

### *DECISION AND ORDER*

LARIMER, District Judge.

## INTRODUCTION

This is an action brought pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to review the final determination of the Commissioner of the Social Security Administration ("the Commissioner") that Amy Frederick ("plaintiff") is not entitled to benefits under the Social Security Act ("the Act") pursuant to 20 C.F.R. §§ 404.1535 and 416.935 because alcoholism was found to be a contributing factor material to the determination of disability. Plaintiff applied for Social Security disability insurance benefits ("SSD") and Supplemental Security Income disability benefits ("SSI") on December 21, 1998 alleging an onset date of December 4, 1998. (T. 76–82).[2] Plaintiff asserts she was unable to work due to mental impairments, including anxiety, depression, and a bipolar disorder. (T. 29).

Plaintiff's application was denied initially and on reconsideration. (T. 44–51, 55–57, 463–67). Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which was held on July 7, 2000. (T. 23–43). The ALJ, after considering all of the evidence, found that plaintiff was disabled based on mental impairments. (Tr. 15–16, 19–22). However, the ALJ determined that because plaintiff's alcoholism was a contributing factor material to her disability, she was not eligible for SSD or SSI benefits. (T. 16–18). The ALJ's decision became the final decision of the Commissioner when, on March 16, 2001, the Appeals Council denied plaintiff's request for review. (T. 6–8).

---

**2.** "T. __" refers to the page of the administrative transcript filed by the Commissioner.

Plaintiff timely commenced this action to review the Commissioner's decision. The Commissioner moves for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c), and seeks an affirmance of her decision that plaintiff cannot be considered disabled due to her alcoholism. (Dkt.# 5). Plaintiff cross-moves to remand the case for the calculation and award of benefits. (Dkt.# 9). As discussed below, the Commissioner's decision is reversed, and this matter is remanded solely for the calculation and payment of benefits.

## FACTUAL BACKGROUND

Plaintiff was born on March 29, 1968. (T. 28). She graduated from high school and completed a two-year degree in chemical technology from Corning Community that she took three and one-half years to complete. (T. 28; 263). She has two children, a girl born in 1988 and a son born in 1996. (T. 427). Plaintiff has an extensive list of intermittent employment, including grocery work, restaurant work, adult care, and various types of employment at temporary employment agencies. (T. 101, 191). Her last job was with U.S. Salt Corporation lab doing quality control testing on salt products. (T. 29). She was fired on December 4, 1998, because she was repeatedly tardy and suffered from depressive symptoms at work, including crying during the day and the inability to concentrate or remember tasks. (T. 29, 123, 144, 146–47, 158–59, 161, 171–72).

Plaintiff has a long history of mental illness and alcohol abuse. She was sexually abused as a child and raped as a teenager. (T. 366, 369). She first reported depression and hallucinations and first attempted suicide around the age of fifteen. (T. 258, 369). By the time of the ALJ's hearing, she had been admitted for inpatient psychiatric treatment seven times. Her eighth in-patient treatment was at a facility that treats both alcohol abuse and mental illness. She also has a history of out-patient psychological counseling for her mental impairments and for alcohol abuse. (T. 37–38). At the time of the hearing she was residing at MICA, a group home for individuals with mental illness and addiction problems, where professionals monitored her daily activities and her medications. (T. 27, 38–39). Plaintiff's treating physicians have diagnosed her as having bipolar disorder with psychotic features, depression, anxiety, post traumatic stress disorder, affective disorder, personality disorder, and alcohol abuse. (T. 196, 207, 226, 264). She had been treated with different medications, including Tegretol, Zoloft, Trilafon, Remeron, and Prozac, but with little success. (T.195, 205, 263, 315, 316, 439, 470).

## DISCUSSION

### I. Standard for Determining Disability

A person is considered disabled when she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months...." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). In order to determine whether a claimant is disabled, an ALJ employs a five-step inquiry:

The first step determines whether the claimant is engaged in 'substantial gainful activity.' If [s]he is, benefits are denied. If [s]he is not engaged in such activity, the process moves to the second step, which decides whether the claimant's condition or impairment is 'severe' i.e., one that significantly limits [her] physical or mental ability to do basic work activities. If the impairment is not severe, benefits are denied. If the impairment is severe, the third step determines whether the claimant's impairments meet or equal those set forth in

the 'Listing of Impairments'... contained in subpart P, appendix 1, of the regulations.... If the claimant's impairments are not listed, the process moves to the fourth step, which assesses the individual's 'residual functional capacity' (RFC); this assessment measures the claimant's capacity to engage in basic work activities. If the claimant's RFC permits [her] to perform [her] prior work, benefits are denied. If the claimant is not capable of doing [her] past work, a decision is made under the fifth and final step whether, in light of his RFC, age, education, and work experience, [s]he has the capacity to perform other work. If [s]he does not, benefits are awarded.

*Bowen v. City of New York,* 476 U.S. 467, 470–71, 106 S.Ct. 2022, 90 L.Ed.2d 462 (1986) (citations omitted) (explaining the process for determining eligibility for SSI and SSD).

## II. Ineligibility for Benefits Where Alcoholism is "Material" to Finding of Disability

Pursuant to 42 U.S.C. §§ 423(d)(2)(C) and 1382c(a)(3)(J), a claimant found to be "disabled" after employment of the five-step sequential evaluation will not be considered disabled within the meaning of the Act "if alcoholism ... would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled." The "key factor" in determining whether alcoholism is a "material" factor is whether the claimant would still meet the definition of disabled under the Act if she stopped using alcohol. 20 C.F.R. §§ 404.1535(b)(1); 416.935(b)(1).

The regulations provide that, where there is evidence of alcoholism, the Commissioner must identify which physical and mental limitations would still remain assuming the claimant did not use alcohol. Then, the Commissioner must analyze whether these limitations would be disabling by themselves. *Id.* at §§ 404.1535(b)(2); 416.935(b)(2). If plaintiff's remaining limitations would still be disabling independent of her alcoholism, then alcoholism will *not* be a contributing factor material to disability and plaintiff will be entitled to SSI and SSD benefits. *Id.* at §§ 404.1535(b)(2)(ii); 416.935(b)(2)(ii). If, however, the Commissioner determines that plaintiff's remaining limitations would not be disabling, then alcoholism will be considered a "material" factor and plaintiff will not be eligible to receive benefits. *Id.* at §§ 404.1535(b)(2)(i); 416.935(b)(2)(i).

The burden is on the disabled claimant to prove that her alcoholism is not a contributing factor material to disability. *See Brueggemann v. Barnhart,* 348 F.3d 689, 693 (8th Cir.2003); *Ball v. Massanari,* 254 F.3d 817, 821 (9th Cir. 2001); *Doughty v. Apfel,* 245 F.3d 1274, 1281 (11th Cir.2001); *see also Birdsall v. Barnhart,* No. 03–CV–448, 2004 WL 834686, *8 (D.Conn. Mar. 12, 2004); *Ostrowski v. Barnhart,* No. 3:01–CV–2321, 2003 WL 22439585, *3 (D.Conn. Oct. 10, 2003).

## III. The ALJ's Decision

Here, the ALJ proceeded through step three of the five-step inquiry. *See Tejada v. Apfel,* 167 F.3d 770, 774 (2d Cir.1999); 20 C.F.R. §§ 404.1520, 416.920. At the first step, the ALJ found that plaintiff had not engaged in substantial gainful activity since December 4, 1998. (T. 14). Next, the ALJ determined that plaintiff suffered from a "severe" impairment, namely bipolar disorder with psychotic features, borderline personality disorder, and alcohol abuse. *Id.* At the third step in the sequential evaluation, the ALJ found that plaintiff's mental impairments were severe enough that they met the requirements of

Listing 12.04 (Affective Disorders)[3] of the Commissioner's Listing of Impairments, found at 20 C.F.R. Part 404, Subpart P, Appendix 1.

Specifically, the ALJ found that the medical evidence demonstrated that plaintiff suffered from elements of depressive and manic syndrome, including hallucinations, delusions, and/or paranoid thinking, anhedonia,[4] thoughts of suicide, feelings of guilt or worthlessness, difficulty concentrating or thinking, and involvement in activities that have a high probability of painful consequences which are not recognized. He also found that plaintiff had marked limitations of function in activities of daily living and maintaining social functioning. (T. 15).

Further, the ALJ cited clinical treatment notes that showed that plaintiff believed that staff at her mental health clinic and others followed her at times, and that she was afraid of people because she thinks that "they know about her." (T. 15). He also recounted an incident that led to a criminal charge of arson in which plaintiff set fire to her kitchen curtains but had not remembered doing so. The ALJ noted another incident where plaintiff stabbed her husband with a knife during an argument.

The ALJ noted that plaintiff had been hospitalized on numerous occasions for suicidal ideation and/or attempted suicide, and for her loss of adaptive behavior. (T. 15–16). He found that her memory, attention, judgment, and concentration were poor, her affect labile,[5] and that she had difficulty trusting people and leaving home to do activities. (T. 15). The ALJ further found that plaintiff's interests were constricted and that she spends her days caring for her young son and drinking alcohol. Plaintiff admitted to having visual hallucinations and to seeing changing faces on the walls. Based on all of this evidence, the ALJ found that plaintiff "is incapable of sustaining the performance of even simple job tasks." (T. 16). Thus, the ALJ found that plaintiff was disabled.

Nevertheless, the ALJ held that plaintiff was not disabled under the Act because her alcoholism was a contributing factor material to the determination of her disability. According to the ALJ:

[Plaintiff's] mental functional limitations would significantly improve if she no longer used alcohol. Her ability to maintain attention and concentration for extended periods would greatly improve. She would be able to complete a normal work day and work week without interruptions. She would be capable of performing simple repetitive work tasks on a sustained basis.

[Plaintiff] has a mood disorder which is exacerbated by alcohol abuse. Her mood is stabilized by medication when she is not drinking. She decompensates and needs hospitalization when drinking[. W]hile she has a severe psychiatric impairment, drug and alcohol abuse is material in the case.

(T. 16).

In reaching his conclusion, the ALJ referred to evidence that plaintiff's psychiatric hospitalizations were preceded by episodes of drinking and that plaintiff ex-

3. An affective disorder is defined by the regulations as a mental impairment characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome. 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 12.04.

4. Anhedonia is defined as an "absence of pleasure from the performance of acts that would ordinarily be pleasurable." Stedman's Medical Dictionary 88 (27th ed.2000).

5. Labile is defined as "free and uncontrolled mood or behavioral expression of the emotions." Stedman's Medical Dictionary 956 (27th ed.2000).

perienced increased anxiety, depression and paranoia when she drinks alcohol. He also cited evidence that plaintiff admitted to drinking heavily before certain episodes of "acting out behavior" and that she did not act impulsively when she was not drinking. He further cited to the fact that plaintiff was able to work part-time in August 1998 (at a time when she apparently was not drinking), despite ongoing anxiety and depression. (T. 16–17).

The ALJ went on to state:

The claimant's psychiatric disorder responds to treatment when she is sober. In March 1998, the claimant was briefly hospitalized after having a fight with her spouse. At the time of discharge, she had returned to her normal level of functioning after being stabilized on medication. . . . when the claimant abuses alcohol, she suffers decompensation with worsening of affective symptoms and the addition of psychotic symptoms. When she abstains from alcohol use, her mood disorder is well controlled in a remitted state and the claimant has the ability to understand/recall instructions, sustain concentration, interact socially, and adapt to change. The undersigned finds that drug and alcohol addiction is material to the finding of disability.

If the claimant abstained from alcohol use, she would be capable of performing unskilled work on a sustained basis. Given this fact and considering the range of work at all exertional levels which the claimant is still functionally capable of performing, in combination with her age, education, and work experience, and using the above-cited Section 204.00, Appendix 2, Subpart P, Regulations No. 4 as a framework for decision-making, the claimant is not disabled.

(T. 18).

## IV. Standards of Review

The Commissioner's decision that plaintiff was ineligible to receive bene-

fits must be affirmed if it applies the correct legal standards and is supported by substantial evidence. 42 U.S.C. §§ 405(g); 1383(c)(3); *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir.2000); *Balsamo v. Chater*, 142 F.3d 75, 79 (2d Cir.1998). Substantial evidence is defined as " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)). If the Commissioner's decision "rests on adequate findings supported by evidence having rational probative force," a district court cannot substitute its own judgment for that of the Commissioner. *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir.2002); *see also Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir.1999) ("[i]t is not the function of a reviewing court to decide *de novo* whether a claimant was disabled.").

Such a deferential standard, however, is not applied to the Commissioner's conclusions of law. *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir.1984); *accord Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir.1999). The Court must determine if the Commissioner's decision applied the correct legal standards in finding that plaintiff was not disabled. "Failure to apply the correct legal standards is grounds for reversal." *Townley*, 748 F.2d at 112. Only after finding that the correct legal standards were applied should the Court consider the substantiality of the evidence. *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir.1987). " 'Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability

determination made according to the correct legal principles.'" *Schaal v. Apfel,* 134 F.3d 496, 504 (2d Cir.1998) (quoting *Johnson,* 817 F.2d at 986).

## V. Analysis of Plaintiff's Mental Impairments and Alcoholism

I agree with the plaintiff that the Commissioner's decision that alcohol is a contributing factor material to the finding of disability is based on legal error and is not supported by substantial evidence. The ALJ erred by failing to determine which of plaintiff's mental impairments would still exist if she stopped using alcohol and by failing to determine whether these limitations would be disabling. In addition, the ALJ improperly accorded more weight to the opinions of non-examining, non-treating physicians than to the opinions of plaintiff's treating sources, and he substituted his own opinion for competent medical opinion. Applying the correct legal standards to all of the evidence in the record, including the medical evidence before the Appeals Council, compels the conclusion that plaintiff would still be disabled as a result of mental impairments even if she stopped using alcohol.

### A. 20 C.F.R. §§ 404.1535 and 416.935

█ The ALJ failed to follow the Commissioner's regulations in deciding that plaintiff's alcoholism is material to her disability. Pursuant to 20 C.F.R. §§ 404.1535 and 416.935, the ALJ was required to determine which of the many psychological impairments that he found plaintiff suffered from existed independently from her alcohol use and then determine whether those limitations were disabling. *See* 20 C.F.R. §§ 424.1535(b)(2); 416.935(d)(2). The ALJ found that the medical evidence supported a finding that plaintiff suffered from a laundry list of psychological impairments and symptoms that met the severity requirements of a Listed Impairment. However, he never indicated which of

these impairments would still exist if plaintiff did not abuse alcohol. Instead, the decision glosses over this analysis by stating simply that plaintiff's "mental functional limitations would significantly improve" if she stopped using alcohol. (T. 16). This is insufficient to comply with the applicable regulations and, therefore, the analysis of whether plaintiff's alcoholism was material to her disability is incomplete.

For instance, the ALJ never addresses whether plaintiff would continue to suffer from bipolar disorder with psychotic features, borderline personality disorder, paranoia, delusions, or hallucinations if she stopped using alcohol. Nor does the decision discuss whether plaintiff would continue to suffer from depressive and manic syndrom elements, including feelings of guilt or worthlessness, suicidal ideation, anhedonia, or difficulty concentrating or thinking. Instead, the ALJ's decision focuses on the fact that certain psychological symptoms become worse when plaintiff uses alcohol. However, a finding that there would be *improvement* in her symptoms is not dispositive of whether her alcoholism is material to her disability. It only proves that her psychological impairments were exacerbated by alcohol, but it says nothing of whether plaintiff still would have disabling psychological impairments if she abstained from abusing alcohol.

The ALJ needed to identify plaintiff's remaining limitations so that he could complete the materiality analysis by determining whether these impairments (absent alcohol abuse) were themselves disabling within the meaning of the Act. By failing to do so, the ALJ never determined whether, absent alcohol abuse, plaintiff's mental impairments would still meet the severity of Listing 12.04 for Affective Disorders. Therefore, his decision regarding plaintiff's alcoholism must be reversed. *Brueggem-*

*ann,* 348 F.3d at 694 (ALJ committed reversible error by failing to follow the procedures outlined in 20 C.F.R. § 404.1535); *accord Ingram v. Barnhart,* 72 Fed.Appx. 631, 2003 WL 21801532 (9th Cir.2003) (unpublished opinion) (reversing ALJ decision regarding the effects of plaintiff's alcoholism where the ALJ committed legal error by failing to identify which of plaintiff's impairments would still exist if she stopped using alcohol).

## B. Treating Physician Opinions

 In addition, reversal is required because the ALJ failed to give plaintiff's treating physicians' opinions concerning plaintiff's impairments adequate weight. It is well-settled that "the medical opinion of a claimant's treating physician is given controlling weight if it is well supported by medical findings and not inconsistent with other substantial record evidence." *Shaw,* 221 F.3d at 134; *see* 20 C.F.R. §§ 404.1527(d)(2); 416.927(d)(2). In determining what weight to give a treating physician's opinion, the Commissioner must consider: (1) the length, nature and extent of the treatment relationship; (2) the frequency of examination; (3) the evidence presented to support the treating physician's opinion; (4) whether the opinion is consistent with the record as whole; and (5) whether the opinion is offered by a specialist. 20 C.F.R. §§ 416.927(d); 416.927(d). Further, the ALJ must articulate his reasons for assigning the weight that he does accord to a treating physician's opinion. *Shaw,* 221 F.3d at 134.

Here, the ALJ failed to make any such findings with respect to the medical opinions of Dr. Paul Povinelli, Dr. Faiz Khan, and Dr. Kyung Chun, all of whom treated plaintiff at one time or another. The ALJ never explained how much weight he gave to their findings in reaching his conclusion. *See* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); *see also Snell v. Apfel,* 177 F.3d 128, 133 (2d Cir.1999) ("Failure to

provide good reasons for not crediting the opinion of a claimant's treating physician is a ground for remand.") (internal quotations omitted).

This error is not harmless here because, as discussed below, the opinions and records of plaintiff's treating physicians support the conclusion that plaintiff suffers from numerous psychological impairments that would still exist even if she stopped abusing alcohol. The ALJ, however, failed even to discuss many of these opinions in his decision.

### 1. Medical Evidence of Plaintiff's Mental Impairments

Plaintiff has been treated by a number of doctors since 1995 in connection with her various in-patient and out-patient treatment programs. Plaintiff was admitted to Elmira Psychiatric Center on August 17, 1995 as an in-patient for three weeks after she attempted to set the curtains of her house on fire and expressed suicidal intentions. Plaintiff was intoxicated at the time of her admission. (T. 350). Dr. Paul Povinelli, a psychologist, performed an extensive psychological examination and assessment of plaintiff fourteen days after her admission that included a battery of psychological tests. (T. 361–65).

Specifically, Dr. Povinelli found that plaintiff suffered from significant mental impairments, including a high level of anxiety, paranoia, and hypervigilance, flight of ideas, and unorganized thinking, which he opined were consistent with a diagnosis of "a recurrent affective disorder with periods of manic-like behavior, alternating with depression and periods of uninhibited behavior which tend to be somewhat psychotic." (T. 362–63). According to Povinelli, plaintiff was "ill-equipped to assume mature and independent roles in life. She is lacking functional competencies and avoids self assertion." (T. 362). He diag-

nosed plaintiff with bipolar disorder, most recent episode hypomanic with transient psychotic features, alcohol abuse, and dependent and passive-aggressive personality traits. (T. 364).

Dr. Povinelli also noted that plaintiff "has a very negative reaction when alcohol enters into her system." (T. 363). He cited the fact that plaintiff had been "drinking heavily" prior to her most recent psychiatric admission. (T. 363). Nevertheless, Dr. Povinelli opined that the psychological tests were not affected by her pre-admission alcohol use and that the results of those examinations gave a "valid picture of her mental status and emotional functioning at this time." (T. 361).

Plaintiff began treating with Dr. Faiz Khan in November 1996 at the Steuben County Mental Health Clinic and continued through early 1999. (T. 247–48; 374–399). Dr. Khan's treatment records note depression, anxiety, suicidal gestures, paranoid thinking (including that people and/or cars were following her), sporadic alcohol abuse, and continued domestic violence problems with her husband. (T. 374–99). Dr. Khan tried plaintiff on a variety of psychiatric medications during this time, including Paxil, Trilafon, Serzone, Zyprexa, Remeron, Tegretol, and Vistaril, which had varying degrees of success. (T. 377). Dr. Khan noted that plaintiff had "bad experiences in the past while working at Corning Glass. Lately, she even has trouble going to stores. She is afraid of people and sometimes she thinks that they know about her." (T. 377). He also noted that plaintiff struggled with fatigue during the day due to her psychotropic medications. (379, 380, 388, 389).

Throughout 1998, Dr. Khan noted that plaintiff went through periods where she drank alcohol and other times when she tried to remain abstinent. (T. 381, 394, 395). He advised plaintiff that "she should not drink while taking medication, because

that will make things worse." (T. 395). In August 1998, plaintiff reported to Dr. Khan that she was not using alcohol at that time. Nevertheless, he found that she was depressed, anxious, and "feeling panicky." Further, plaintiff admitted that she was having difficulty taking her medications regularly. (T. 396–97). Moreover, on or about plaintiff's alleged onset date in December 1998, Dr. Khan found that plaintiff was anxious, tense, and depressed, and noted that she was having panic attacks. He also noted that when plaintiff attempts to work, "she gets sick" and then gets fired for being unreliable. (T. 247–48).

While treating with Dr. Khan, plaintiff was hospitalized twice. She was admitted a second time to the Elmira Psychiatric Center in March 1998 for approximately thirty days for continued treatment of her bipolar illness with psychotic features because of a relapse of her symptoms that could not be adjusted through medication. Plaintiff was admitted in a very manic and paranoid state, and was experiencing visual and olfactory hallucinations. (T. 209). Plaintiff had recently attacked her husband with a knife during a fight. (T. 209). Dr. Povinelli conducted another metal status examination of plaintiff during this hospital stay. (T. 209–211). He noted that she had a long history of psychotic range and affective disturbances since 1988, as well as a history of alcohol abuse. (T. 210). He found that she currently was suffering from "a very clear bipolar disorder with psychotic features, manic phase" and "alcohol abuse." (T. 210).

Dr. Povinelli also noted that "heavy drinking usually precipitates her psychotic decompensations." (T. 209). Nevertheless, the medical records from this psychiatric admission indicate clearly that plaintiff had mental illnesses that exist apart from her alcohol abuse, including bipolar

disorder, hypomanic with transient psychotic features, and a personality disorder with dependent and passive aggressive traits. (T. 196). Although alcohol tended to exacerbate these conditions, plaintiff's in-patient treatment focused primarily on treating her mental illnesses. Her medications were adjusted, the dosages were monitored closely, she received individual and group psychotherapy, and completed activity programs that required maintained concentration and an absence of paranoid thinking. Her condition was noted to have improved on discharge and "she was able to return to her normal level of functioning"(which was not defined). (T. 196). On discharge, it was recommended that she receive follow up treatment for "both her alcohol abuse and for her affective disorder." (T. 196).

A few months later, plaintiff was admitted to Saint Joseph's Hospital for a week in July 1998 for extreme depression and suicidal ideation. On discharge, she was found to be "somewhat more emotionally stable but remained severely depressed." (T. 244). Plaintiff was treated there by Dr. Jeannine Bordonaro. Dr. Bordonaro noted that although plaintiff had a history of alcohol use, she was not drinking prior to her admission. Plaintiff sought counseling and treatment rather than acting impulsively and taking an overdose of pills, which could well have occurred if plaintiff had been under the influence of alcohol. (T. 427–33). Dr. Bordonaro found that plaintiff did not act impulsively as long as she was not drinking. (431). However, impulse control was not plaintiff's only mental impairment. She diagnosed bipolar and personality disorders and depression. (T. 427).

From March 1999 through 2000, plaintiff sought more intensive treatment, three days a week, at Steuben County Community Mental Health Center and Alcoholism/Substance Abuse Services Day Treatment Program. (T. 258–319). While there, she was seen by her treating psychiatrist, Dr. Kyung Chun, and her treating social worker and counselor, Angela Jeronimo. (T. 258–319). She attended group and individual therapy, received alcohol counseling, and various skills training. Plaintiff was diagnosed with bipolar disorder with psychotic features, post-traumatic stress disorder, alcohol abuse and caffeine intoxication. She complained of increased anxiety, suicidal thoughts, and paranoid thinking. Dr. Chun worked with plaintiff to find an appropriate level of psychiatric medication, and adjusted the type and dosage of her medications a number of times. (T. 291, 308, 315). Plaintiff's compliance with her medication regimen varied. At times, she abused the medication, once requiring a visit to the Corning Hospital Emergency Room in September 1999. (T. 214–15).

During this time period, plaintiff's alcohol abuse fluctuated between drinking on a daily basis to periods of sobriety that lasted for weeks at a time. (T. 260.281, 286, 311, 315, 319). Dr. Chun and Ms. Jeronimo found that plaintiff used alcohol as "self-medication" for her mental impairments, and both counseled her about that practice on a number of occasions. (284; 286; 315). Even during periods of sobriety, however, plaintiff experienced high anxiety, was unable to perform an everyday routine, and continued to suffer from paranoia and thoughts that people were trying to hurt her. (T. 277; 297).

In October 1999, Dr. Chun also completed a psychiatric review evaluation and mental residual functional capacity assessment at the request of the Office of Disability Determination. (T. 226–33). In it, he gives his opinion that plaintiff suffers from severe depression, debilitating anxiety, poor coping skills, limited insight, and poor judgment. He diagnosed her with

bipolar disorder with psychotic features, post-traumatic stress disorder, and alcohol abuse. (T. 226; 231–33). When asked about plaintiff's mental impairments when not abusing alcohol, Dr. Chun concluded that plaintiff continued to suffer from mental impairments. (T. 229). He referenced his residual functional capacity assessment which concluded that plaintiff suffered from limiting psychiatric impairments that precluded her from working. (T. 229; 231–32).

Specifically, Dr. Chun reports in his evaluation of plaintiff that her anxiety prevents her from completing tasks in her treatment groups, that she suffers limited insight and judgment, does not take criticism well, and is unable to remember or follow simple instructions. In addition, Dr. Chun opined that plaintiff was unable to maintain an ordinary routine and had a very difficult time adapting to changes. He found that she was limited in her activities of daily living, understanding and memory, sustained concentration and persistence, social interaction, and adaption. (T. 231–32).

The ALJ's failure to discuss these opinions in his decision was legal error and requires reversal. 20 C.F.R. §§ 404.1527(d)(2); 416.927(d)(2) ("We will always give good reasons in our ... decision for the weight we give your treating source's opinion."); *Schaal*, 134 F.3d at 505. Further, given the length, nature and extent of the treating relationship, the frequency of examination, the objective evidence supporting their opinions, and their respective specialties in the area of psychiatric medicine, I find that the ALJ should have accorded controlling weight to them. 20 C.F.R. §§ 404.1527(d)(2); 416.927(d)(2); *Shine v. Barnhart*, No. 3:02–CV–1482, 2004 WL 834642, *17 (D.Conn. Mar. 8, 2004) (reversing ALJ's decision that plaintiff's alcohol and drug dependency were material to a finding of disability because

ALJ failed to address the opinions of plaintiff's treating physicians and did not articulate the weight he gave to their opinions); *Corretjer v. Barnhart*, No. 02 Civ. 1700, 2003 WL 1936146, *3–4 (S.D.N.Y. Apr. 22, 2003) (reversing Commissioner's decision finding alcohol and drug abuse material to disability where the ALJ failed to properly weigh treating physician's opinion that plaintiff's psychiatric impairments exist independently of her substance abuse and persist even in periods of abstinence).

### 2. Other Consistent Medical Evidence

█ Furthermore, plaintiff's treating physician's opinions were consistent with other evidence in the record. For instance, plaintiff was seen by Dr. Ruana Starer on February 10, 1999 for an examining consultative psychiatric evaluation at the request of the Office of Disability Determination. (T. 437). Dr. Starer diagnosed plaintiff with bipolar disorder, most recent episode mixed, and alcohol dependence in partial remission. She also noted plaintiff's history of psychiatric hospitalizations. (T. 439). Dr. Starer gave the following opinion of plaintiff's mental condition:

Miss Frederick appears to be an individual who has decompensated emotionally and can barely function adequately. Her thought processes are disjointed, tangential and hypomanic. Flight of ideas is evident. Affect is quite labile. She has many suicidal thoughts but denies any intent. Her medications do not appear to be particularly affective in controlling her symptoms. It was therefore recommended to her that she seek further help from her psychiatrist and counselor as soon as possible.

Given the severity of Miss Frederick's current psychopathology, it is felt that she could not work in any job capacity. She could not concentrate adequately

nor could she be reliable. She also has a history of alcohol dependence and has not entirely stopped drinking. Her inability to express emotion appropriately would preclude any adequate functioning in a job situation. ·

(T. 439). Although Dr. Starer does not speak directly to the issue of the materiality of plaintiff's alcoholism to her disability, her opinion indicates that plaintiff suffers from mental illnesses that are severe and separately identifiable from her alcohol abuse, which Dr. Starer found was in "partial remission."

In addition, Dr. Renaida Prado completed a mental RFC and psychiatric review of plaintiff's medical records in December 1999. (T. 223–25; 249–57). Dr. Prado opined that plaintiff suffered from an affective disorder, an anxiety related disorder, a personality disorder, and alcohol addiction. (T. 249). She also found that plaintiff was markedly limited in three areas of functioning, including the ability to sustain an ordinary routine without special supervision, the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, and the ability to accept instructions and respond appropriately to criticism from supervisors. (T. 223–24). She further found that plaintiff was moderately limited in ten areas of functioning, including the ability to understand and remember detailed instructions, to maintain attention and concentration, to

perform activities within a schedule, maintain regular attendance and punctuality, to work in coordination with others, to interact appropriately with the general public, to get along with coworkers, to respond appropriately to changes in the work setting, and to set realistic goals or make plans independently. (T. 223–24). Dr. Prado does not give an opinion as to the effects that plaintiff's alcoholism have on her mental illnesses. Nevertheless, her opinion regarding plaintiff's mental impairments are consistent with the treating physician's opinions outlined above.

### 3. Improper Reliance on Non–Examining Sources

 Although the ALJ's decision is silent as to the weight he accorded any particular medical opinion, it is clear that the ALJ relied primarily on the opinions of the non-examining, non-treating review physicians, Dr. C. Richard Nobel, Dr. Theodore Cohen, and Dr. S.R. Bortner, who opined that alcohol abuse was material to the determination of plaintiff's disability.[6] (T. 442–55). In fact, most of the ALJ's findings regarding the effects of plaintiff's alcoholism are taken verbatim from the review physician's opinions. (*See* third full paragraph at T. 16, and T. 443; see also third full paragraph at T. 17 and T. 455).

The ALJ's reliance on these opinions was legal error. First of all, their opinions were offered in early 1999, before plaintiff began treatment with the Steuben County Community Mental Health Center. As

---

**6.** Dr. Nobel conducted a consultative psychiatric review of plaintiff's medical records through February 1999, and determined that plaintiff has a "mood disorder" that was "exacerbated by alcohol" but is stabilized by medication when she is not drinking. Dr. Nobel concluded that "while she has a severe impairment, alcohol addiction is material" to her disability. (T. 442–50). Dr. Nobel also noted plaintiff's functional limitations in her

activities of daily living activities, in maintaining social functioning and frequent deficiencies of concentration. (T. 449). On March 20, 1999, Dr. Theodore Cohen, a reviewing medical consultant, agreed with Dr. Nobel's finding that plaintiff's alcohol addiction was material to plaintiff's case. (T. 451–54). Dr. S.R. Bortner, a second reviewing medical consultant, also agreed with the finding of materiality. (T. 455).

such, none of the review physicians had the benefit of the medical records from March 1999 through 2000, when plaintiff was being treated regularly by Dr. Chun and Ms. Jeronimo. Second, their findings are not consistent with the other medical evidence of record summarized above and are not adequately explained. Lastly, none of the review physicians had a treatment relationship with plaintiff.

In light of these facts, it was incorrect for the ALJ to place such significant weight on their findings. *See* 20 C.F.R. §§ 404.1527(d)(3); 416.927(d)(3) ("because nonexamining sources have no examining or treating relationship with you, the weight we will give their opinions will depend on the degree to which they provide supporting explanations for their opinions. We will evaluate the degree to which these opinions consider all of the pertinent evidence in your claim, including opinions of treating and other examining sources.").

**C. Substantial Evidence**

 Finally, the ALJ's decision that plaintiff would not be disabled if she stopped abusing alcohol is not supported by substantial evidence. The ALJ did not cite evidence in the record to support his conclusion that if plaintiff stopped using alcohol, her other obvious mental impairments would somehow evaporate. *See Rosa v. Callahan,* 168 F.3d 72, 79 (2d Cir.1999) (an ALJ " 'cannot arbitrarily substitute his own judgment for competent medical opinion.' ") (citing *McBrayer v. Sec'y of Health and Human Services,* 712 F.2d 795, 799 (2d Cir.1983)). The ALJ also failed to cite medical evidence to support his conclusion that her "mental functional limitations would significantly improve if she no longer used alcohol." The ALJ's conclusions conflict with the medical records from plaintiff's treating sources that indicate that plaintiff's primary diagnoses are serious mental illnesses with a secondary issue concerning alcohol abuse,

an abuse frequently tied to plaintiff's efforts to alleviate the symptoms of her mental disease. (T. 226–33, 258–59, 361–65, 470–71).

In addition to the evidence discussed above, plaintiff submitted a report to the Appeals Council co-signed by her treating psychiatrist, Dr. Chun, and her treating counselor, Ms. Jeronimo, that speaks directly to the relationship between plaintiff's mental illness and her alcohol use. (T. 470–71). Although the ALJ did not have this evidence before him, the law is settled that this evidence is properly part of the record and can be considered by the Court when reviewing the final decision of the Commissioner. *Perez v. Chater,* 77 F.3d 41, 45 (2d Cir.1996) ("the new evidence submitted to the Appeals Council following the ALJ's decision becomes part of the administrative record for judicial review when the Appeals Council denies review of the ALJ's decision."); *see also* 20 C.F.R. §§ 404.976(b); 416.1476(b).

The report from her treating sources clearly summarized plaintiff's condition:

[Plaintiff] has a lengthy history of mental illness and psychiatric treatment with numerous hospitalizations and out-patient treatments.... She has been diagnosed with Bipolar Disorder and Post Traumatic Stress Disorder.

[Plaintiff] has made numerous suicidal gestures including overdosing, ingesting nail polish remover and cutting her writs and forearms. She has often experienced anxiety attacks with severe depression. She had difficulty concentrating and exhibited flight of ideas on a consistent basis. She often had suicidal thoughts with hopelessness, worthlessness, and uselessness. Her mood was labile and her behavior erratic. Overall, [plaintiff] has shown little progress in her ability to remain psychiatrically stable for extended periods of time. Medications have proved marginally helpful.

There have been periods during her outpatient stays where [plaintiff] did use alcohol to "self medicate." She would experience such emotional pain that she resorted to alcohol to help alleviate this pain. When she was sober for a period of time, her mood did improve somewhat but she continued to be plagued by paranoia, suicidal thoughts, anxiety and "fears of being around other people." [Plaintiff's] use of alcohol is typical of a person who is unable to get relief from medications and other normal coping strategies. It is known that alcohol and other addictive properties will not resolve mental illness but only exacerbate one's symptoms.

It is our clinical opinion that [plaintiff's] mental impairments do exist independently of her alcohol problem. However, she does often attempt to relieve symptoms of mental illness (i.e., depression, anxiety, bipolar disorder and borderline personally disorder) with alcohol.

(T. 470–71).

Based on the entire record, I feel that plaintiff has sustained her burden to show that her disabling mental impairments continue to exist in spite of her alcohol abuse.

 A remand for the calculation of benefits is warranted because further administrative proceedings or another hearing would serve no useful purpose. *Johnson*, 817 F.2d at 986; *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir.1980); *Martinez v. Commissioner*, 262 F.Supp.2d 40, 49 (W.D.N.Y.2003) ("Where the existing record contains persuasive proof of disability and a remand for further evidentiary proceedings would serve no further purpose, a remand for calculation of benefits is appropriate."). The record here has already

been developed fully for the relevant period, and there is substantial evidence and persuasive proof of disability. Therefore, plaintiff is entitled to benefits. *See Corretjer*, 2003 WL 1936146, at *3–4 (remanding case solely for calculation of benefits where the ALJ failed to accord controlling weight to treating physician's opinion that plaintiff's psychiatric diagnoses, including PTSD, borderline personality disorder, and major recurrent depression, exist independently of her substance abuse); *Clark v. Apfel*, 98 F.Supp.2d 1182, 1185–86 (D.Or.2000) (remanding case solely for calculation of benefits where ALJ's decision regarding plaintiff's drug addiction was not supported by substantial evidence and was based on legal error); *accord Ingram*, 72 Fed.Appx. at 636–38, 2003 WL 21801532, at *3–5 (remand solely for calculation of benefits where ALJ's determination regarding the materiality of plaintiff's alcoholism was not supported by substantial evidence and record compelled conclusion that plaintiff would still be disabled absent alcoholism).[7]

## CONCLUSION

The Commissioner's motion for judgment on the pleadings (Dkt. # 5) is denied. Plaintiff's motion to remand for the calculation and payment of benefits (Dkt. # 9) is granted. The final decision of the Commissioner is reversed, and the case is remanded for calculation and payment of Social Security disability insurance benefits and Supplemental Security Income benefits.

IT IS SO ORDERED.

---

**7.** In light of my findings here, I need not address plaintiff's arguments that the Commissioner failed to follow the guidelines set by the Administration in its April 20, 1996 Tele-

type and as contained in HALLEX regarding the interplay between mental illness and drug and alcohol abuse.